UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
 ------------------------------------------------------------------------- x

LGN INTERNATIONAL, LLC, and,
PRUDENT INVESTIMENTOS LTDA,

                                        No. 21-cv-940-WMS

                       Plaintiffs,

          - against -

HYLAN ASSET MANAGEMENT, LLC,
ANDREW SHAEVEL,
BAHAMAS MARKETING GROUP,
JOEL TUCKER,
SQ CAPITAL, LLC,
JT HOLDINGS, INC.,
HPD LLC,
HIRSCH MOHINDRA,
MAINBROOK ASSET PARTNERS I, LLC,
WORLDWIDE PROCESSING GROUP LLC,
FRANK A. UNGARO, and
BOBALAW VENTURES,

                 Defendants.

 ------------------------------------------------------------------------- x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
HYLAN ASSET MANAGEMENT, LLC, ANDREW SHAEVEL,
MAINBROOK ASSET PARTNERS I, LLC, HYLAND DEBT FUND LLC,
AND BOBALAW VENTURES' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. PRO. 12(b)(6)**


*LIPPES MATHIAS LLP*
Dennis C. Vacco, Esq.
Scott S. Allen Jr., Esq.
Carmen A. Vacco, Esq.
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................1

FACTUAL BACKGROUND...................................................................................................2

STANDARD OF REVIEW .....................................................................................................3

ARGUMENT ..........................................................................................................................4

    I.    Plaintiffs fail to plead an enterprise or pattern of racketeering activity ......................4

          a.     Plaintiffs fail to plead an enterprise .........................................................5

          b.     Plaintiffs fail to plead a pattern of racketeering activity...........................9

    II.    Plaintiffs have not alleged that Defendants attempted a takeover of their legitimate
        business, and therefore, Plaintiffs' Second Cause of Action is implausible................12

    III.  Plaintiff's Third Cause of Action, RICO Conspiracy, is implausible..........................13

    IV.  This Court should decline to retain supplemental jurisdiction over the
        state law claims. ........................................................................................................14

CONCLUSION.......................................................................................................................15

# **TABLE OF AUTHORITIES**

**Federal Cases**                                                                                          Page

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ...................................................................3

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) ....................................................3

*Faber v. Metro. Life Ins. Co., 658 F. 3d 98, 104 (2d Cir. 2011)* ......................................3

*Rolon v. Henneman, 517 F. 3D 140, 149 (2d Cir. 2008) (Sotomayor J.)* .......................3

*Nolan v. Cty. of Erie, No. 1:19-CV-01245, 2021 WL 51004, at \*4 (W.D.N.Y. Jan. 6, 2021)* .........3

*L-7 Designs, Inc. v. Old Navy, LLC, 647 F. 3d 419, 430 (2d Cir 2011)* .........................4

*DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001)* .....................................................4

*DeFalco v. Bernas, 244 F.3d 286, 321 (2d Cir. 2001)* .....................................................8

*Continental Fin. Co. v. Ledwith, No. 08 Civ. 7272, 2009 WL 1748875, at \*5 (S.D.N.Y. June 22, 2009)* ........................................................................................................5

*Boyle v. United States, 556 U.S. 938, 945, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009)* .................5

*D. Penguin Bros. v. City Nat. Bank, 587 F. App'x 663, 667-68 (2d Cir. 2014)* ..........................6,7

*Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 120 (2d Cir. 2013)* ..................................6

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 175 (2d Cir. 2004)* ......................6

*FD Prop. Holding, Inc. v. U.S. Traffic Corp., 206 F. Supp. 2d 362, 372 (E.D.N.Y. 2002)* ............8

*GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463, 468 (2d Cir. 1995)* .........8

*H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)* .........8

*Mackin v. Auberger, 59 F. Supp. 3d 528, 551 (W.D.N.Y. 2014)* ...................................10

*Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106, 119 (2d Cir.2013)* ................10

*Plount v. Am. Home Assurance Co.*, 668 F.Supp. 204, 206 (S.D.N.Y. 1987) ...............................10

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) ...........................10

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)..............................10

*Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017) ............................................10

*Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) ............................10

*Ozbakir v. Scotti, 764 F. Supp. 2d 556, 570 (W.D.N.Y. 2011)*........................................11

*Boneta v. Rolex Watch USA, Inc.*, 232 F.Supp.3d 354 (S.D.N.Y.2017)........................................11

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir.2004) ................11

*Beauford v. Helmsley*, 865 F.2d 1386 (2d Cir.) ........................................11,12

*U.S. v. Indelicato, 865 F.2d 1370 (2d Cir. 1989)* ........................................12

*Allen v. New World Coffee, Inc., No. 00 CV 2610, 2002 WL 432685, at \*5 (S.D.N.Y. Mar. 19, 2002)* ........................................12

*Breslin Realty Dev. Corp. v. Schackner, 397 F. Supp. 2d 390, 399 (E.D.N.Y. 2005)* ................12

*Westchester Cty. Indep. Party v. Astorino, 137 F. Supp. 3d 586, 616 (S.D.N.Y. 2015)* ................12

*Cont'l Fin. Co. v. Ledwith, No. 08 CV 7272, 2009 WL 1748875, at \*4 (S.D.N.Y. June 22, 2009)* ........................................12

*Dornberger v. Metro. Life Ins. Co., 961 F. Supp. 506, 525 (S.D.N.Y. 1997)* ................13

*Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062–63 (2d Cir. 1996)........................................13

*Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 243, 263 (W.D.N.Y. 2010) ........................13

*Dreamco Dev. Corp. v. Empire State Dev. Corporation, No. 15-CV-901-FPG-HKS, 2017 WL 4230501, at \* 4 (W.D.N.Y. Sep. 25, 2017)*................13,14

*United States v. Pizzonia*, 577 F.3d 455, 463 (2d Cir. 2009)........................................14

*Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998)*............................................14

*Servs. Corp. v. First Equities Corp. of Fla., 338 F.3d 119, 126 (2d Cir. 2003)*........................14,15

*Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988)* ........................................15

*TPTCC NY, Inc. v. Radiation Therapy Servs., Inc., 453 F. App'x 105, 107 (2d Cir. 2011)* ..........15

*Weathers v. Millbrook Cent. Sch. Dist., 486 F. Supp. 2d 273, 276 (S.D.N.Y. 2007)*..................15

**Federal Statutes** <u>Page</u>

18 U.S.C. § 157 ...........................................................................................................2

18 U.S.C. § 7201 .........................................................................................................2

18 U.S.C. § 1951 .........................................................................................................7

18 U.S.C. § 1341 .........................................................................................................9

18 U.S.C. § 1343 .........................................................................................................9

18 U.S.C. § 1961 (1) (B) ............................................................................................9

18 U.S.C. § 1962 .........................................................................................................1
§ 1962(b) ...........................................................................................................5, 12
§ 1962(c) ...........................................................................................................14
§ 1962(d) ...........................................................................................................5, 14

18 U.S.C. § 2314 .........................................................................................................2

18 U.S.C. § 7201 .........................................................................................................2

28 U.S.C. § 1367(a) .....................................................................................................2

28 U.S.C. § 1367(c) (3) ...............................................................................................2

31 U.S.C. § 5313 .........................................................................................................9

31 U.S.C. § 877 ...........................................................................................................9

31 U.S.C. § 1512 .........................................................................................................9

Fed. R. Civ. P. Rule 8 (a) (2)) .....................................................................................4

Fed. R. Civ. P. Rule 12(b)(6) ......................................................................................1, 3, 10

Local Rule 9 ................................................................................................................5

## PRELIMINARY STATEMENT

Plaintiffs LGN International, LLC ("LGN") and Prudent Investimentos LTDA ("Prudent") filed a Second Amended Complaint (Dkt. 65, "SAC") against, among other defendants, Hylan Asset Management, LLC (Hylan), Andrew Shaevel, Mainbrook Asset Partners I, LLC (Mainbrook), Hylan Debt Fund LLC (improperly sued as "Hyland Debt Fund LLC"), and Bobalew Ventures (improperly sued as "Bobalaw Ventures") (collectively "Moving Defendants"), generally alleging that Moving Defendants participated with other Defendants in the operation of an unlawful enterprise, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, and a conspiracy to defraud Plaintiffs. *See generally*, Dkt. 65, ¶22. In a feeble effort to establish an association-in-fact enterprise (*see* Dkt. 65, ¶¶ 1, 65, 71) necessary to sufficiently plead a RICO violation, Plaintiffs cut allegations found within various government agency lawsuits (*see e.g.*, Dkt. 65, ¶¶ 32, 34, 40, 53, 60), pasted them within their SAC, offered labels, conclusions, and a recitation of the RICO elements, and hoped the Court will find that Defendants' independent actions collectively satisfy RICO pleading requirements.  Plaintiffs have failed, however, to adequately plead a purpose, the relationships among defendants, or the longevity necessary to establish an association-in-fact enterprise, as well as a pattern of racketeering activity, and therefore, the Court must dismiss the SAC in its entirety.

Moving Defendants hereby move to dismiss the SAC for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. Pro. 12(b)(6).  For causes of action one, two, and three ("the RICO causes of action"), Plaintiffs fail to establish the existence of an enterprise or a pattern of racketeering activity.  For the Second Cause of Action specifically, the SAC also fails to allege that Defendants attempted a takeover of Plaintiffs' legitimate business, and therefore, the Second Cause of Action is particularly implausible.  And once the RICO causes of action are

dismissed, this Court lacks supplemental jurisdiction over the remaining causes of action under 28 U.S.C. § 1367(a).  *See* 28 U.S.C. § 1367(c)(3).  Consequently, the SAC must be dismissed.

## FACTUAL BACKGROUND

Defendant Joel Tucker alone developed the "debt packages" containing "phantom debt" (*see* Dkt. 65, ¶¶ 26, 32-34), and then *sold* those packages to other defendants, who ultimately sold them to Moving Defendants (*see* Dkt. 65, ¶ 33 ("Tucker generally promoted these 'debts' under the umbrella name 'Bahamas Marketing Group' or 'BMG,' and sold many of them to former debt broker and collector Hirsh Mohindra, who in turn sold them to the Hylan Defendants.")); *see also* Declaration of Dennis C. Vacco, dated October 29, 2021, ("Vacco Dec.) at Exhibit 1.  Mr. Shaevel, through Hylan Debt Fund LLC and Mainbrook, did indeed place debt purchased from Mohindra, but did not know that Tucker created and sold fraudulent debt until after the subject transactions with Plaintiffs.  *See* Dkt. 65, ¶27 (indicating Moving Defendants eventually received "ample notice" that Tucker, through Mohindra, sold them phantom debt). Contrary to Plaintiffs' allegation (*see* Dkt. 65, ¶35), Tucker had zero ownership interest in Hylan Debt Fund LLC, Mainbrook, or any other entity owned by Moving Defendants.  *See* Declaration of Andrew Shaevel, ("Shaevel Dec.").  Indeed, none of the Moving Defendants worked with each other or any other defendant to defraud Plaintiffs.  Nevertheless, Plaintiffs' SAC attempts to string together a series of arm's length transactions between several independent actors and characterize them as a RICO enterprise.

Critically, on July 16, 2020, Defendant Joel Tucker signed the attached Plea Agreement and pleaded guilty to a violation of 18 U.S.C. § 2314 [Interstate Transportation of Stolen Money], 18 U.S.C. § 157 [Bankruptcy Fraud], and 18 U.S.C. §7201 [Tax Evasion] in United States District

Court, Western District of Missouri ("Tucker Plea Agreement").  Vacco Dec., at Ex. 1.  Within

the Factual Basis of the Tucker Plea Agreement , Defendant Tucker admits as follows:

> From 2014 to 2016, Joel Tucker, operating under multiple businesses and business
> bank accounts, engaged in two related schemes to defraud:  a sale of fraudulent debt
> scheme and a bankruptcy fraud scheme.  In the sale of fraudulent debt scheme,
> *Tucker defrauded third party debt collectors* and millions of individuals listed as
> debtors through the sale of falsified debt portfolios.  These portfolios were false in
> that Tucker did not have chain of title to the debt, the loans were not necessarily
> true debts, and the dates, amounts, and lenders were inaccurate and in some cases
> fictional … Tucker used the companies … *JT Holdings, Inc.* … and *SQ Capital
> LLC* to sell the debt. (emphasis added).

*Id.* at p. 2.  Moving Defendants are examples of defrauded third-party debt collectors.

### STANDARD OF REVIEW

The Supreme Court has made clear that "[t]o survive a motion to dismiss [under Fed. R.

Civ. Pro. 12(b)(6)]," a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A pleading that offers 'labels and

conclusion' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting

*Twombly,* 550 U.S. at 555).  "'[N]aked assertions' devoid of 'further factual enhancement'"

likewise do not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557).

As the Court noted in *Iqbal*, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusion." *Id.*; *accord Faber v. Metro. Life Ins.

Co.*, 658 F.3d 98, 104 (2d Cir. 2011) (noting that courts are not "bound to accept conclusory

allegations or legal conclusions masquerading as factual conclusions") (quoting *Rolon v.

Henneman,* 517 F. 3D 140, 149 (2d Cir. 2008) (Sotomayor J.)).  Thus, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements" are not adequate. *Iqbal,*

556 U.S. at 678; *see also Nolan v. Cty. of Erie*, No. 1:19-CV-01245, 2021 WL 51004, at *4

(W.D.N.Y. Jan. 6, 2021).Deciding whether a complaint has satisfied the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. "Plausibility thus depends on a host of consideration: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy,* LLC*,* 647 F. 3d 419, 430 (2d Cir. 2011) (citing *Iqbal,* 556 U.S. at 673-82). Where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint is subject to dismissal, for "the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a) (2)).

## ARGUMENT

Stated plainly, the SAC contains poorly pled fraud allegations masquerading as RICO violations. Indeed, Plaintiffs bury the limited factual allegations within a confusing heap of labels, conclusions, and a recitation of the RICO elements in an unconvincing attempt to establish plausible claims. In so doing, Plaintiffs have failed to properly allege an enterprise, a pattern of racketeering activity, or the takeover of a legitimate business (*see* the Second Cause of Action only) necessary for the RICO causes of action, and they therefore must be dismissed. Accordingly, this Court lacks subject matter jurisdiction over the state law causes of action that follow, and this Court must dismiss the SAC in its entirety.

### I.      Plaintiffs fail to plead an enterprise or pattern of racketeering activity.

In order to state a claim under § 1962(c) (*see* First Cause of Action), a plaintiff must allege "(1) conduct (2) of an enterprise (3) though a pattern (4) of racketeering activity." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479,

496 (1985)).  Similarly, for § 1962(b) (*see* Second Cause of Action), Plaintiffs must allege that (1) an enterprise existed affecting interstate commerce and (2) that each defendant acquired or maintained an interest in or control over the enterprise through a pattern of racketeering. *Trautz v. Weisman*, 809 F. Supp. 239, 245 (S.D.N.Y. 1992).  Section 1962(d) (see Third Cause of Action) simply proscribes conspiring to violate subsections (a), (b) or (c). *Id.* at 246.

Accordingly, both an enterprise and a pattern of racketeering activity are necessary elements of the first three causes of action in the present case.  However, these three causes of action fail because Plaintiffs have failed to plausibly allege that Defendants were part of an enterprise or that Moving Defendants participated in a pattern of racketeering activity.

**a.  Plaintiffs fail to plead an enterprise.**

As a threshold matter, a claim of a RICO enterprise must be supported by information "regarding the hierarchy, organization, and activities of the alleged enterprise," to support the allegation that the enterprise is a functioning unit. *Continental Fin. Co. v. Ledwith*, No. 08 Civ. 7272, 2009 WL 1748875, at *5 (S.D.N.Y. June 22, 2009); *see also* Local Rule 9. [1]  Plaintiffs' SAC fails to provide information regarding the hierarchy, organization, or activities of the alleged enterprise therein, and should be dismissed on these grounds alone.

Instead, in conclusory fashion, the SAC falsely alleges that Defendants formed an association-in-fact enterprise. *See* Dkt. 65, ¶ 1.  As the Court is aware, an association-in-fact enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Boyle v. United States*, 556 U.S. 938, 945 (2009). An association-in-fact enterprise "must have at least three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient

---

[1] Plaintiffs have also failed to comply with Local Rule 9, which requires Plaintiffs to supplement the SAC with a filed RICO Statement.

to permit these associates to pursue the enterprise's purpose." *Id*. at 946.; *D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 667-68 (2d Cir. 2014) ("[F]or an association of individuals to constitute an enterprise," the members of the association must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013))).  The SAC fails to sufficiently allege all three elements.

In the SAC, Plaintiffs have not plausibly alleged a common purpose or sufficient relationships that satisfy an association-in-fact enterprise.  Rather, Plaintiffs allege that Defendants have committed a limited series of acts that, in sum, injured Plaintiffs.  But an objective reading of the SAC demonstrates that each group of Defendants acted independently with a separate goal. *See* Dkt. 65, ¶ 32 ("[Tucker] then packaged that information as 'debts' for sale to third-party debt collectors … Tucker *sold* at least $3 billion worth of fake debts to Hirsh Mohindra … [who then] supplied the Hylan defendants with billions in Tucker debt.") (emphasis added).  As the Court is aware, Plaintiffs may not, as they have done in the SAC, simply string together various defendants and label them an enterprise. *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004).

Indeed, the SAC supports that Defendant Joel Tucker alone developed the "debt packages" containing "phantom debt" (*see* Dkt. 65, ¶¶ 26, 32-34), and then *sold* those packages to other defendants, who then sold them to Moving Defendants.  *See* Dkt. 65, ¶ 33 ("Tucker generally promoted these 'debts' under the umbrella name 'Bahamas Marketing Group' or 'BMG,' and sold many of them to former debt broker and collector Defendant Hirsh Mohindra, who in turn sold them to the Hylan Defendants."); *see also* Vacco Dec., at Ex. 1.  To hide his fraud, Defendant Tucker mixed phantom debt with legitimate debt.  Defendant Tucker's guilty plea in the Western

District of Missouri confirms that Moving Defendants were defrauded victims of Tucker, not working with Tucker. *See* Vacco Dec., at Ex. 1.  *See e.g., D. Penguin Bros. Ltd.*, 587 Fed. Appx. at 668 (holding the plaintiff failed to establish an association-in-fact enterprise where there was no plausible basis to infer the defendants acted "on behalf of the enterprise as opposed to on behalf of [themselves] in their individual capacities, to advance their individual interest." (internal citations omitted)).

Disturbingly, Plaintiffs also string together the independent actions of Defendant Worldwide Processing Group LLC ("Worldwide") – a *third party debt collector* – and allege a Hobbs Act, 18 U.S.C. § 1951 predicate (*see* Dkt. 65, ¶¶ 25, 63).  But critically, there is no nexus whatsoever between the allegedly "viole[nt]" (Dkt. 65, ¶25), "threaten[ing]" or "harass[ing]" (Dkt. 65, ¶ 48) debt collection practices that Worldwide allegedly executed against consumers and the alleged injury to Plaintiffs here. *See* Dkt. 65, ¶ 22 (Plaintiffs allege they "were fraudulently induced to part with a sum of more than \$2.5m as a price of … debt packages").  To the contrary, the SAC confirms that Plaintiff Prudent actually *received remittances* (Dkt. 65, ¶43) from Worldwide's collections (Dkt. 65, ¶46), not that Worldwide's alleged actions caused Plaintiffs' injury, or that Worldwide worked with any other Defendant to defraud Plaintiffs.  Plaintiffs are clearly desperate to establish the purpose and relationships among Defendants necessary to establish an enterprise, but such an enterprise simply does not exist.

Furthermore, the SAC fails to establish the necessary longevity element.  The SAC attempts to mold a single alleged scheme to defraud Plaintiffs (*see* Dkt. 65, ¶3), allegedly lasting from "on or about 2013 through November 2015 & 2016" (Dkt. 65, ¶ 6), into a RICO enterprise. But courts have historically refused to find RICO violations in cases where the plaintiffs, like Plaintiffs here, "attempt to transform [a] single scheme of limited duration into a RICO

enterprise." *Ozbakir v. Scotti*, 764 F. Supp. 2d 556, 570 (W.D.N.Y. 2011); *see also Stein v. N.Y. Stair Cushion Co.*, No. 04 CV 4741, 2006 WL 319300, at *8 (E.D.N.Y. Feb. 10, 2006) (dismissing RICO cause of action where plaintiffs alleged "a single scheme of narrow scope, including one victim and a limited number of related participants"); *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 372 (E.D.N.Y. 2002) ("Courts in the Second Circuit have generally held that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, the conduct is lacking in closed-ended continuity. This is the case even when the scheme's duration exceeds one year."); *Siddique v. Anwar*, No. 15CV4278DLIRML, 2017 WL 8776968, at *5 (E.D.N.Y. Dec. 8, 2017).

Here, Plaintiffs attempt to extend the "relevant times" by stating "through and continuing to the filing of this [Second] Amended Complaint and until late 2019 when the Defendants attempted to eliminate evidence of their wrong doings" (Dkt. 65, ¶6), but Plaintiffs do not actually allege with any specificity how any of the Defendants "attempted to eliminate evidence".  In any event, Plaintiffs allege an end date for the relevant time period, and Moving Defendants therefore assume Plaintiffs are attempting to allege closed-ended continuity in an effort to establish a pattern of racketeering activity.  Under these circumstances, when calculating the relevant time period, the Court must consider only the time during which defendants allegedly committed *the predicate acts alleged*. *See DeFalco v. Bernas*, 244 F.3d 286, 321 (2d Cir. 2001).  Actions that do not constitute predicate acts are not considered when calculating the relevant time period. *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 468 (2d Cir. 1995).

Applied here, a generous reading of the SAC would conclude that the predicate acts alleged[2] fall within a limited window beginning February 24, 2016, when Mr. Shaevel allegedly

---

[2] The SAC generally alleges several emails and phone calls (*see* SAC, ¶¶22, 31, 57, 63), but none with any specificity in a manner that would sufficiently put Moving Defendants on notice.

wrote an email to Mr. Gitman containing Plaintiffs' Exhibit A (*see* Dkt. 65, ¶ 43) and ending May 25, 2016, when Mr. Shaevel allegedly wrote an email to Mr. Gitman containing Plaintiff's Exhibit C (*see* Dkt. 65, ¶ 56). This limited window only spanned over the course of approximately three months. Stated plainly, Plaintiffs have failed to demonstrate the longevity necessary to establish an association-in-fact enterprise, nor could they, because it simply isn't there.

For these reasons, Plaintiffs have failed to adequately allege an association-in-fact enterprise and the RICO causes of action are implausible.

**b. Plaintiffs fail to plead a pattern of racketeering activity.**

Moreover, the SAC fails to establish a pattern of racketeering activity. As the Court is aware, "racketeering activity" encompasses, among other things, any act indictable for crimes enumerated under 18 U.S.C. § 1961(1)(B), which include, for purposes relevant to the present case, 18 U.S.C. § 1341 [mail fraud] and 18 U.S.C. § 1343 [wire fraud].[3]

To allege a RICO violation, Plaintiffs must plead at least two predicate acts, show that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Predicate acts are "related" for RICO purposes when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240 (quotation marks omitted). Here, the SAC fails to specifically allege

---

[3] In conclusory and disturbing fashion, Paragraph 25 of the SAC alleges that Defendants engaged in conduct in violation of 31 U.S.C. § 5313 [Reports on domestic coins and currency transactions], and paragraph 75 alleges that Defendants engaged in violations of 18 U.S.C. § 877 [Mailing threatening communications from foreign country] and 18 U.S.C. § 1512 [Witness tampering]. The SAC, however, is devoid of any allegations describing how defendants violated these statutes. The Court should not consider these references to unsupported RICO predicates, which Plaintiffs likely included in error.

how "[e]ach of the Defendants engaged in two or more predicate acts of racketeering …" (*see* Dkt. 65, ¶ 74), or how the acts that are alleged amount to continuing criminal activity.

Additionally, to allege a violation of the wire or mail fraud statute, it is necessary to show that defendants formed a scheme or artifice to defraud, defendants used United States wires or mails or caused use of mails in furtherance of scheme, and defendants did so with specific intent to defraud. *Mackin v. Auberger,* 59 F. Supp. 3d 528, 551 (W.D.N.Y. 2014). And importantly, where a civil RICO claim is predicated on acts of fraud, a plaintiff must comply with Fed. R. Civ. P. 9(b)'s requirement to plead with particularity. *See id.* (citing *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir.2013); *see also Plount v. Am. Home Assurance Co.*, 668 F. Supp. 204, 206 (S.D.N.Y. 1987) ("[A]ll of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions."). As such, "[a]llegations of predicate mail and wire fraud acts 'should state the contents of the communications, who was involved, ... where and when they took place, and ... explain why they were fraudulent.' " *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)).  "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Reich v. Lopez,* 858 F.3d 55, 59 (2d Cir. 2017) (citing *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014).

Here, the SAC only alleges two wires with any specificity whatsoever:

1. On or about February 24, 2016, Mr. Shaevel wrote an email to Mr. Gitman with Plaintiffs' Exhibit A as an attachment. Dkt. 65, ¶ 43; and

2. On or about March 25, 2016, Mr. Shaevel wrote an email to Mr. Gitman with Plaintiff's Exhibit C as an attachment. Dkt. 65, ¶ 55.[4]

---

[4] At ¶ 56, Plaintiffs allege that Exhibit B was signed, but no wire or mailing is alleged.

However, Plaintiffs have failed to establish that Moving Defendants had any fraudulent intent in sending these emails. To the contrary, as explained above, the SAC confirms that Moving Defendants were defrauded victims of Defendant Tucker, not that Moving Defendants acted with Tucker's same fraudulent intent. *See* Vacco Dec., at Ex. 1; *see also* Dkt. 65, ¶ 33 ("Tucker generally promoted these 'debts' under the umbrella name 'Bahamas Marketing Group' or 'BMG,' and sold many of them to former debt broker and collector Hirsh Mohindra, who in turn sold them to the Hylan Defendants.")); *see also* Dkt. 65, ¶27 (Moving Defendants eventually received "ample notice" that Tucker, through Mohindra, sold phantom debt). And even if Moving Defendants had the requisite intent here – which they didn't – these two emails alone are insufficient to establish a *continuing pattern* to execute a fraud against Plaintiffs. *See, e.g., Ozbakir v. Scotti*, 764 F. Supp. 2d 556, 570 (W.D.N.Y. 2011) (holding that, even assuming the defendants' alleged use of mails and wires from April 2004 and January 2006 was in furtherance of the scheme and a racketeering activity, "the time period during which the predicate acts occurred still only lasted for about a year and nine months [which] does not suggest a continuing scheme."); *Boneta v. Rolex Watch USA, Inc.*, 232 F.Supp.3d 354 (S.D.N.Y.2017) (determining that two communications between watch manufacturer's counsel and United States Custom and Border Protection officials regarding gray market protection for manufacturer's products imported into United States from overseas were insufficient to establish pattern of racketeering activity required to support importer's RICO claim).

Otherwise, the SAC generally alleges that Defendants emailed and participated in phone calls (*see* Dkt. 65, ¶¶ 22, 31, 57, 63), but not with any specificity or in a manner that would sufficiently put Moving Defendants on notice. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 178 (2d Cir.2004) ("[A]ll allegations of fraudulent predicate acts[ ] are subject

11

to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."); *but see Beauford v. Helmsley*, 865 F.2d 1386 (2d Cir. 1989), *cert. granted, judgment vacated*, 492 U.S. 914 (1989) (defendants were on specific notice of the 8,286 mailings); *U.S. v. Indelicato,* 865 F.2d 1370 (2d Cir. 1989) (defendants were on notice of the three murders).

In light of the foregoing, the SAC fails to adequately plead predicate acts or the continuity necessary to establish a pattern of racketeering activity.  Therefore, Plaintiffs' RICO causes of action must be dismissed.

## II.   Plaintiffs have not alleged that Defendants attempted a takeover of their legitimate business, and therefore, Plaintiffs' Second Cause of Action is implausible.

Under 18 U.S.C. § 1962(b), it is unlawful for "any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain ... any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  The purpose of this statute is "to prohibit the takeover of a legitimate business through racketeering, typically extortion or loansharking." *Allen v. New World Coffee, Inc.*, No. 00 CV 2610, 2002 WL 432685, at *5 (S.D.N.Y. Mar. 19, 2002); *Breslin Realty Dev. Corp. v. Schackner*, 397 F. Supp. 2d 390, 399 (E.D.N.Y. 2005).

To state a claim under this provision, " 'the plaintiff must allege that: (1) the defendants engaged in a pattern of racketeering activity for the purpose of acquiring an interest in or maintaining control of the enterprise; (2) the defendants in fact acquired an interest in or maintained control of the enterprise through a pattern of racketeering activity; and (3) the plaintiff suffered an injury as a result of the acquisition or control, separate and apart from any injuries attributable to the individual predicate acts of racketeering.' " *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 616 (S.D.N.Y. 2015) (quoting *Cont'l Fin. Co. v. Ledwith*, No. 08

CV 7272, 2009 WL 1748875, at *4 (S.D.N.Y. June 22, 2009)). The gravamen of a §1962(b) violation "is not the commission of predicate acts, but rather the acquisition or maintenance of an interest in or control of an enterprise." *Dornberger v. Metro. Life Ins. Co.*, 961 F. Supp. 506, 525 (S.D.N.Y. 1997).

To even have standing to bring a claim under §1962(b), a plaintiff must allege injury from the defendants' acquisition or maintenance of any interest in or control of an enterprise. *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062–63 (2d Cir. 1996) (explaining that a violation of § 1962(b) requires a specific type of injury: an "acquisition" or "maintenance" injury, which must be distinct from the injury caused by the racketeering activity itself), *rev'd on other grounds*, 525 U.S. 128 (1998). Failure to allege a distinct acquisition injury requires dismissal of a claim pursuant to Section 1962(b). *See Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 243, 263 (W.D.N.Y. 2010) ("Plaintiffs here have alleged only harm as a result of the predicate acts, not the reinvestment of the money allegedly obtained from the illegal predicate acts. Thus, no claim has been plausibly plead under § 1962(b).").

The SAC here fails in every respect. In particular, there are no allegations within the SAC that Defendants attempted the takeover of Plaintiffs' businesses through extortion or loansharking, or that Plaintiffs suffered an acquisition injury. Accordingly, Plaintiffs do not have standing to pursue a claim under § 1962(b), and Cause of Action II must be dismissed. *See Siddique* 2017 WL 8776968, at *3 (finding that Plaintiff does not have standing because he continues to be the only owner of his store).

### III.   Plaintiffs' Third Cause of Action, RICO Conspiracy, is implausible.

Plaintiffs also assert that each defendant entered into a RICO conspiracy. However, a RICO conspiracy claim must be dismissed where the substantive RICO claim is deficient. *See*

*Dreamco Dev. Corp. v. Empire State Dev. Corporation*, No. 15-CV-901-FPG-HKS, 2017 WL 4230501, at * 4 (W.D.N.Y. Sep. 25, 2017) ("Because Plaintiffs do not plausibly allege a violation of 18 U.S.C. § 1962(c), the Court adopts Judge Schroeder's recommendation and the claim for RICO conspiracy under 18 U.S.C. § 1962(d) is also dismissed."). Therefore, once this Court dismisses the First and Second Causes of Action, this Court must dismiss the conspiracy claim within the Third Cause of Action, too.

Moreover, a RICO conspiracy claim requires an allegation that the defendants agreed to participate " 'in a charged enterprise's affairs' through a pattern of racketeering, 'not a conspiracy to commit predicate acts.' " *Siddique*, 2017 WL 8776968, at *5 (citing *United States v. Pizzonia*, 577 F.3d 455, 463 (2d Cir. 2009). Here, the SAC fails to allege that Defendants agreed to participate in a charged enterprise's affairs' through a pattern of racketeering activity, nor could it. Paragraph 101 of the SAC alleges, "[t]he purpose of the conspiracy was steal money [sic] from the plaintiffs" but at best, that is an allegation that Defendants agreed to commit a predicate act, which is insufficient. Dkt. 65, ¶¶ 101. Consequently, the alleged RICO conspiracy is implausible even if the First and Second causes of action survive.

## IV.   This Court should decline to retain supplemental jurisdiction over the state claims.

Having failed to adequately plead any claim for relief under federal law, Plaintiffs' state-law breach of contract claims should be dismissed as well. As a general rule, "where the federal claims are dismissed before trial, the state law claims should be dismissed as well." *Marcus v. AT &T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998); *see also* 28 U.S.C. § 1367(c)(3) (stating a district court may dismiss claims as to which it had supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction"). In determining whether to exercise its discretion to retain supplemental jurisdiction, "the district court balances several factors including considerations of

14

judicial economy, convenience, and fairness to litigants." *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 338 F.3d 119, 126 (2d Cir. 2003) (internal citation & quotation marks omitted).

Here, the factors weigh against retention of supplemental jurisdiction over the state law claims. In particular, this case is in its infancy. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) (elimination of federal claims at early stage is a powerful factor in favor of declining to exercise supplemental jurisdiction). Discovery has not begun, and judicial resources have not yet been expended to resolve the substantial disputes that may arise as to discovery on the state law claims. *See, e.g.*, *TPTCC NY, Inc. v. Radiation Therapy Servs., Inc.*, 453 F. App'x 105, 107 (2d Cir. 2011) (finding district court should not have exercised supplemental jurisdiction when the "action was in its infancy at the time of the District Court's decision" and the parties "had yet to produce any documents, confer to resolve issues regarding the scope of document discovery, or notice a single deposition"); *Weathers v. Millbrook Cent. Sch. Dist.*, 486 F. Supp. 2d 273, 276 (S.D.N.Y. 2007) (declining to retain supplemental jurisdiction where "significant document discovery remains to be completed").

For these reasons, the Court should decline to maintain supplemental jurisdiction over Plaintiffs' state-law claims, namely, Causes of Action IV, IV [sic], V and VI.

## CONCLUSION

For these foregoing reasons, the Second Amended Complaint fails to state a claim upon which relief can be granted. Moving Defendants respectfully request that this Court dismiss the Complaint in its entirety with prejudice.

Dated: Buffalo, New York
October 29, 2021

Respectfully submitted,

LIPPES MATHIAS LLP

*/s/Dennis C. Vacco*
Dennis C. Vacco, Esq.
Scott S. Allen Jr., Esq.
Carmen A. Vacco, Esq.
*Attorneys for Moving Defendants*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
T: (716) 853-5100
dvacco@lippes.com
sallen@lippes.com
cvacco@lippes.com

16