UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LGN INTERNATIONAL, LLC,
PRUDENT INVESTIMENTOS LTDA,

                              Plaintiffs,

        v.                                              **DECISION AND ORDER**
                                                        21-CV-940S
HYLAN ASSET MANAGEMENT LLC, et al.,

                              Defendants.


## I.      Introduction

        This is a civil Racketeering Influenced and Corrupt Organization ("RICO") and

common law fraud action (see Docket No. 65, 2d Am. Compl.) transferred from the United

States District Court for the Southern District of New York by Judge Lorna Schofield

(Docket No. 74).

        Some Defendants (Hylan Asset Management, Andrew Shaevel, Mainbrook Asset

Partners I, LLC, Hylan Debt Fund LLC, and Bobalew Ventures (improperly sued as

"Bobalaw Ventures," see Docket No. 78, Movants Memo. at 1)) initially[1] moved to dismiss

Plaintiffs' three civil RICO counts in the Second Amended Complaint for Plaintiffs' failure

to allege a RICO enterprise or a pattern of racketeering and urged this Court to decline

to exercise supplemental jurisdiction over the remaining common law counts for forms of

fraud (Docket No. 78).  Without the RICO Case Statement (as required by this Court's

Local Civil Rule 9, W.D.N.Y. Loc. Civ. R. 9), that Motion was granted with dismissal of the

case without prejudice to Plaintiffs filing their RICO Case Statement (Docket No. 81).

---

[1]According to present Movants, the present Motion to Dismiss, Docket No. 86, is the eleventh
attempt by Defendants challenging Plaintiffs' pleadings, Docket No. 86, Movants Memo. at 1 n.2.

On February 20, 2023, Plaintiffs duly submitted their RICO Case Statement (Docket No. 84) reviving their claims.  Moving Defendants (Hylan Asset Management, Shaevel, Mainbrook Asset Partners I, LLC, Hylan Debt Fund LLC, and Bobalew Ventures, collectively "Movants") now filed their present Motion to Dismiss (Docket No. 86)[2].

For the reasons stated below, Movants' Motion (Docket No. 86) is granted, dismissing the claims alleged against the Movants.

## II.    Background

### A.  Summary of Allegations

This Court assumes the truth of the following factual allegations contained in Plaintiffs' Second Amended Complaint (Docket No. 65), see Hospital Bldg. Co. v. Trustee of Rex Hosp., 425 U.S. 738, 740, 98 S.Ct. 1848, 48 L.Ed.2d 338 (1976), and their RICO Case Statement (Docket No. 84), McLaughlin v. Anderson, 962 F.2d 187, 189 (2d Cir. 1992) (in Motion to Dismiss, taking facts as true as alleged in the Complaint and as supplemented by the RICO case statement).

Plaintiffs allege that Defendants bought and sold what Plaintiffs term "phantom debts," either fabricated debts from misappropriated customer information or allegedly bogus auto-funded payday loans "foisted upon consumers without their permission" and disputed by the alleged debtor consumers (Docket No. 65, 2d Am. Compl. ¶ 26).  In the RICO Case Statement, they claim that Defendants in 2014-18 offered for sale or sold delinquent debts when in fact no such debt existed (Docket No. 84, Pls. RICO Case

---

[2] In support of their Motion, Movants submit their attorney's Declaration with exhibits (including the declaration of Andrew Shaevel) and their Memorandum of Law, Docket No. 86.  Movants reply with their Reply Memorandum, Docket No. 89.

In opposition, Plaintiffs submit their Memorandum of Law, Docket No. 88.

Movants effectively repeat the arguments raised in their original Motion to Dismiss, see Docket Nos. 78, 80; cf. Docket No. 79, Pls. Memo. in Opposition.

Statement at 1-3), that these so-called debts either were fake or were imposed upon consumers without their knowledge or consent (id. at 4).  Plaintiffs allege that Defendants used racketeering means to profit from these fake debt accounts by selling these questionable debts to unwary debt buyers, such as Plaintiffs (id. at 9).  Defendants thus violated 18 U.S.C. § 1962(b) and (c) and conspired to commit these violations in violation of § 1962(d).  They claim they paid Defendants a total of over $2.5 million for such phantom debts (id. at 2, 3-4).

Plaintiffs allege Shaevel and Hirsh[3] Mohindra coordinated the collection of the phantom debts on Prudent's behalf using debt collectors they always used including Worldwide Defendants (Defendants Worldwide Processing Group and its owner, Frank Ungaro, Jr.) (Docket No. 65, 2d Am. Compl. ¶ 44).  Further, they claim that Worldwide Defendants collected the other Defendants' phantom debts (by interstate wires and mail) that the collectors knew were phantom or disputed.  Plaintiffs accuse Worldwide Defendants of using deceptive or coercive tactics to collect these debts.  (Id. ¶¶ 44-52.) This collection scheme was alleged in another case in this Court, Federal Trade Commission v. Hylan Asset Management, LLC, No. 18CV710 (EAW), in which in 2019 the defendants there stipulated to enjoining their collection activities (id. ¶¶ 53-54; see Docket No. 88, Pls. Memo. at 8).  Plaintiffs merely imply (but fail to expressly allege) that Prudent's debts were collected by Worldwide.

Plaintiffs claim, however, that the individual Defendants later were barred by the Federal Trade Commission and several courts from engaging in debt collection (Docket

---

[3]Or "Hirsch" according to the caption, see Docket No. 65, 2d Am. Compl. at 1; cf. Fed. R. Civ. P. 10(a); 5A Charles A. Wright, Arthur R. Miller & A. Benjamin Spencer, Federal Practice and Procedure § 1321, at 242 (2018) (the caption is not determinative as to the identity of the parties to the action).

No. 84, Pls. RICO Case Statement at 1, 6).  The Second Amended Complaint noted the other actions against the Defendants seeking to enjoin the sale or collection of phantom debts (Docket No. 65, 2d Am. Compl. ¶¶ 32-34 (Tucker), 60-61 (Mohindra); see also id. ¶ 59 (Federal Trade Commission complaints about Worldwide's collection practices)).

Plaintiffs claim that Defendants formed an association-in-fact RICO enterprise to sell those phantom debts (Docket No. 65, 2d Am. Compl. ¶¶ 34, 71, 85, 36, 40).  They contend that Defendants defrauded them by marketing to Plaintiffs packages of phantom debts by email, mail, and telephone calls, ultimately inducing Plaintiffs to purchase these debt accounts from Defendants for the total of $2.5 million (id. ¶¶ 22, 43, 56).  Plaintiffs assert that this correspondence violated wire fraud (18 U.S.C. § 1343) and mail fraud (18 U.S.C. § 1341) (id. ¶¶ 64, 25).  The Second Amended Complaint (id. ¶ 25) and Plaintiffs' RICO Case Statement also allege violations of the Currency and Foreign Transactions Reporting Act (31 U.S.C. § 5313), and interstate transportation of persons or property obtained by fraud (violations of 18 U.S.C. § 2314 and the Hobbs Act, 18 U.S.C. § 1951) as additional predicate acts (Docket No. 84, Pls. RICO Case Statement at 8, 9).

In 2015, Defendants Shaevel and Mohindra planned to sell $200 million worth of BMG Warehouse Debt to Plaintiff Prudent Insetimentos LTDA ("Prudent") (Docket No. 65, 2d Am. Compl. ¶ 43).  On February 24, 2016, Shaevel emailed the president of Prudent, Jacob Gitman, offering the debt account.  Prudent agreed to purchase these debt accounts for $2 million.  (Id., Ex. A.)

On May 25, 2016, Shaevel again emailed Gitman (but in his role as the president of Plaintiff LGN International ("LGN")), offering to LGN the BMG Warehouse debt. Shaevel (through Hylan Debt Fund) ultimately entered into a Participation Agreement with

LGN for $550,000 for an interest in a debt package of over 140,000 debt accounts with a face value totaling $70 million.  (Id. ¶ 56, Ex. B.)

Plaintiffs now allege that from 2013 to the present, Defendants engaged in a pattern of racketeering activity, having engaged in at least two predicate acts of racketeering (id. ¶¶ 62, 63), a scheme to defraud Plaintiffs and others (id. ¶ 64).  Plaintiffs identify Defendants as the RICO enterprise or as an association-in-fact enterprise (id. ¶ 65).  They also cite various federal actions against individual Defendants alleging fraud arising from the transfer of phantom debts (id. ¶¶ 34, 53-54).

As amplified in their RICO Case Statement, Plaintiffs claim the pattern of racketeering was the sale of the phantom debt portfolios (Docket No. 84, Pls. RICO Case Statement at 9-10).  They claim that the Defendants are an association-in-fact enterprise (id. at 12, 13).  They further contend that Defendants conspired to keep the true nature of the debts concealed from buyers and the market and attempted to collect and collected fake debts (id. at 15).

B.  Parties

Plaintiff LGN is a Florida limited liability corporation with a place of business in New York, New York, while Prudent is a Brazilian limited liability corporation (Docket No. 65, 2d Am. Compl. ¶¶ 20, 5, 21).

Defendants include the Movants:  Hylan Asset Management, LLC, a New York corporation based in Amherst, New York; its principal, New York resident Andrew Shaevel; Hylan Debt Fund LLC, a Delaware limited liability corporation; Bobalew Ventures, a venture capital arm of Bobalew, LLC, which Shaevel is an officer; and Mainbrook Asset Partners I, LLC, a Delaware limited liability corporation (id. ¶¶ 7, 8, 19,

19a, 18).  According to Shaevel, Hylan Asset Management, Mainbrook Asset Partners I, and Hylan Debt Fund all were dissolved (Docket No. 86, Movants Atty. Decl., Ex. 1, Andrew Shaevel Decl. ¶ 1 ("Shaevel Decl.")).  Shaevel denies Defendant Joel Tucker ever had an ownership interest in Hylan Asset Management, Mainbrook Asset Partners I, Hylan Debt Fund or Bobalew LLC (Shaevel Decl. ¶ 3; see Docket No. 86, Movants Memo. at 3).

The remaining Defendants are Joel Tucker and his corporate affiliates, Bahamas Marketing Group, LLC; SQ Capital LLC, JT Holdings, Inc., and HPD LLC (Docket No. 65, 2d Am. Compl. ¶¶ 10, 9, 32, 11, 12, 13); Hirsh Mohindra (id. ¶ 14); and Worldwide Processing Group, LLC, and its owner Frank Ungaro, Jr. (id. ¶¶ 15, 17, 44).  These Defendants have yet to appear in this action.

Movants report that Tucker pled guilty in the United States District Court for the Western District of Missouri for selling fraudulent debt from 2014 to 2016 (Docket No. 86, Movants Memo. at 4; id., Movants Atty. Decl. Ex. 2, Tucker Plea Agreement).

C.  Alleged Counts

The Second Amended Complaint alleges seven counts.  The first three counts allege violations of RICO and the last four allege common law fraud torts under New York law.  (Docket No. 65, 2d Am. Compl.)

In Count I, Plaintiffs allege all Defendants violated 18 U.S.C. § 1962(c) by employing or being associated with an association-in-fact enterprise engaged in activities that affected interstate or foreign commerce through a pattern of racketeering activity, namely the transaction in phantom debts (id. ¶¶ 69-80).

Count II alleges all Defendants violated 18 U.S.C. § 1962(b) by using unlawful means to sell phantom debts by misleading buyers as to the debts' origins and value (id. ¶¶ 81-98, 90).

Count III alleges all Defendants also conspired to violate provisions of RICO, 18 U.S.C. § 1962(b) or (c), in violation of § 1962(d) (id. ¶¶ 99-102).

Plaintiffs next allege four common law fraud counts, while alleging two counts designated "Count IV" (id. ¶¶ 103-07, 108-14).   The first "Count IV" alleges that all Defendants engaged in a common law fraud (id. ¶¶ 103-07).   The second "Count IV" alleges that all Defendants engaged in a conspiracy to defraud (id. ¶¶ 108-14).

Count V next alleges Defendants Shaevel, Bobalew Ventures, Tucker, and Mohindra, and their respective companies (Hylan Asset Management, Bahamas Marketing Group) conducted common law fraudulent inducement (id. ¶¶ 115-23).

Finally, Count VI alleges that Shaevel, Bobalew Ventures, Mohindra, and their companies also were unjustly enriched by their scheme (id. ¶¶ 124-28).

### D.   Proceedings in the Southern District of New York

Plaintiffs began this action in the Southern District of New York, No. 20 CIV 3185 (Docket Nos. 1, 4, Compl.).   Some Defendants later moved to dismiss the First Amended Complaint (Docket No. 39) for improper venue and for failure to state a claim (Docket No. 52).   Plaintiffs then filed their Second Amended Complaint (Docket No. 65). Judge Schofield then ordered the parties to brief whether this action should be transferred to this District rather than dismissed (Docket No. 71; see Docket Nos. 72 (Plaintiffs' response), 73 (Defendants' response)).   On August 9, 2021, Judge Schofield denied dismissal without prejudice and transferred this action to this District (Docket No. 74).

E.  Proceedings in this Court Following Transfer

After the transfer to this Court, Movants reported in a Status Conference their intention to file their first Motion to Dismiss in this Court (Docket No. 77; see Docket No. 78).  Meanwhile, Plaintiffs had not submitted a RICO Case Statement either to the Southern District of New York (not required under that court's rules) or to this Court.

Movants then moved to dismiss (Docket No. 78).  On January 5, 2023, this Court granted the Motion to Dismiss without prejudice but authorized Plaintiffs to file their RICO Case Statement (Docket No. 81).

Plaintiffs thereafter filed their RICO Case Statement (Docket No. 84), see W.D.N.Y. Loc. Civ. R. 9.  This Court then gave Defendants 21 days from February 23, 2023, to answer or move to dismiss (Docket No. 85).  Movants timely filed their present Motion to Dismiss (Docket No. 86).  After responding (Docket Nos. 88) and filing further supporting papers (Docket No. 89), this Motion was deemed submitted without oral argument.

### III.    Discussion

A.  Applicable Standards

1.  Motion to Dismiss Rule 12(b)(6)

Movants move to dismiss the Second Amended Complaint (as supplemented by the RICO Case Statement) for its failure to state a claim (Docket No. 86, Notice of Motion; see Docket No. 78, Notice of Motion).  Under Rule 12(b)(6), the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  As the Supreme Court held in Bell Atlantic Corp. v.

Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46).

To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555. As reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556 . . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' Id., at 557 . . . (brackets omitted)."

Iqbal, supra, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) Motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), such as Defendants' receivables purchase agreements with Plaintiffs (Docket No. 65, 2d Am. Compl. Exs. A, B; Docket No. 84, Pls. RICO Case Statement, Exs. A, C; see also Docket No. 84, Pls. RICO Case Statement Ex. B), or any document incorporated in it by reference. Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).

In considering such a motion, the Court must accept as true all the well pleaded facts alleged in the Complaint. Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985). Plaintiffs contend that the facts alleged in the light most

9

favorable to Plaintiffs (Docket No. 88, Pls. Memo. at 1, quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true.  New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

## 2.  Civil RICO Substantive Counts, Counts I, II

Plaintiffs' burden is "high when pleading RICO allegations as '[c]ourts look with particular scrutiny at claims for a civil RICO, given RICO's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies,'" Mackin v. Auberger, 59 F. Supp. 3d 528, 541 (W.D.N.Y. 2014) (Wolford, J.) (quoting Spiteri v. Russo, No. 12CV2780 (MKB) (RLM), 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013).

Under this Court's Local Civil Rule 9, any party alleging a RICO claim also must file and serve a separate document called a "RICO Case Statement" alleging the particulars of its RICO claim, W.D.N.Y. Loc. Civ. R. 9; see Barrus v. Dick's Sporting Goods, Inc., 732 F. Supp. 2d 243, 259 (W.D.N.Y. 2010) (Siragusa, J.).  That RICO Case Statement requires details of the RICO claim beyond what is alleged in the pleading.  The RICO Case Statement must be read with the Complaint, McLaughlin, supra, 962 F.2d at 189; Mackin, supra, 59 F. Supp. 3d at 541 (considering RICO Case Statement as supplementing the Amended Complaint).

a.  18 U.S.C. § 1962(c), Count I

As alleged in Count I, Title 18 U.S.C. § 1962(c) provides

"It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

Id.

A violation of § 1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (footnote omitted); DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir. 2001) (Docket No. 86, Movants Memo. at 6; Docket No. 78, Movants Memo. at 4-5; Docket No. 80, Movants Reply Memo. at 2).  Thus, Plaintiffs must allege that a defendant "through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce," DeFalco, supra, 244 F.3d at 306 (citing cases).  These requirements must be established for each Defendant, id.

b.  § 1962(b), Count II

Section 1962(b) states "it shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1962(b).  Plaintiffs here need to allege a takeover of a legitimate business affecting interstate commerce and that they suffered injury from the acquisition or control of the enterprise separate from any predicate act of racketeering (Docket No. 86, Movants Memo. at 15-

16; see Docket No. 78, Movants Memo. at 12), Westchester Cnty. Indep. Party v. Astorino, 137 F. Supp. 3d 586, 616 (S.D.N.Y. 2015).

> "To state a claim under this provision, 'the plaintiff must allege that: (1) the defendants engaged in a pattern of racketeering activity for the purpose of acquiring an interest in or maintaining control of the enterprise; (2) the defendants in fact acquired an interest in or maintained control of the enterprise through a pattern of racketeering activity; and (3) the plaintiff suffered an injury as a result of the acquisition or control, separate and apart from any injuries attributable to the individual predicate acts of racketeering.' Cont'l Fin. Co. v. Ledwith, No. 08 CIV. 7272, 2009 WL 1748875, at *4 (S.D.N.Y. June 22, 2009),"

Westchester Cnty. Indep. Party, supra, 137 F. Supp. 3d at 616.

The gravamen of an 18 U.S.C. § 1962(b) violation is the acquisition or maintenance of an interest in the enterprise, Dornberger v. Metro. Life Ins. Co., 961 F. Supp. 506, 525 (S.D.N.Y. 1997) (Docket No. 86, Movants Memo. at 15).  "Thus, a plaintiff cannot recover under § 1962(b) unless he alleges a distinct injury caused not by predicate acts but by the defendant's acquisition or maintenance of an interest in or control of an enterprise," id.

### 3.  RICO Enterprise Terms Defined

As used in § 1962, "enterprise" is defined as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961(4).  Plaintiffs thus must allege that the enterprise affected interstate commerce and that each Defendant maintained an interest or control over the enterprise through a pattern of racketeering, Trautz v. Weisman, 809 F. Supp. 239, 245 (S.D.N.Y. 1992) (Docket No. 86, Movants Memo. at 6).  The alleged scheme must be longer than a single incident or involve more than a limited number of participants or victims with a limited goal (id. at 9-10), see also

Sedima, supra, 473 U.S. at 496 n.14.  This enterprise also must be separate from the pattern of racketeering activity, United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

There must be a nexus between the enterprise and the racketeering activity, United States v. Indelicato, 865 F.2d 1370, 1384 (2d Cir. 1989) (in banc); First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004).  That enterprise is the group of persons or associations while the pattern of racketeering activity is the series of crimes committed by or through the enterprise.  Turkette, supra, 452 U.S. at 583.  Evidence of an enterprise shows its ongoing organization and that "various associates function as a continuing unit" while evidence of racketeering activity is proof of the requisite number of acts committed by participants in the enterprise, id.

As "association-in-fact enterprise" as alternatively alleged here is "an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit," Boyle v. United States, 556 U.S. 938, 945, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009) (id. at 7).  It "must have at least three structural features:  a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose," id. at 946 (id.).  The members of the enterprise must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes," Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 120 (2d Cir. 2013) (id.); see Mackin, supra, 59 F. Supp. 3d at 542. The longevity of the association-in-fact enterprise requires "proof that the enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity,'" Boyle, supra, 556 U.S. at 946.

Plaintiffs alleging a RICO violation also must satisfy a "distinctiveness" requirement "by alleging the existence of two distinct entities:  '(1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name.'  <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, 161, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001); <u>Mackin</u>, <u>supra</u> 59 F. Supp. 3d at 545.  Plaintiff's complaint must allege facts supporting the separate existence of a RICO enterprise," <u>Mackin</u>, <u>supra</u>, 59 F. Supp. 3d at 545.

### 4.  Racketeering Defined

RICO defines "pattern of racketeering activity" as requiring "at least two acts of racketeering activity" with the last act occurring at least within 10 years of the first act, 18 U.S.C. § 1961(5).  As noted in <u>DeFalco</u>, "although at least two predicate acts must be present to constitute a pattern, two acts alone will not always suffice to form a pattern," 244 F.3d at 306; citing <u>Sedima, S.P.R.L.</u>, <u>supra</u>, 473 U.S. at 496 n.14.

"Racketeering activity" includes indictable acts for crimes listed in 18 U.S.C. § 1961(1)(B), alleged here mail fraud and wire fraud (<u>id.</u> at 11) among other offenses.

Plaintiffs need to allege at least two of these predicate indictable acts and show that they are related and they amount to, or pose a threat of, continuing criminal activity, <u>H.J. Inc.</u>, <u>supra</u>, 492 U.S. at 239 (<u>id.</u>).

### 5.  Predicate Acts

Where a predicate act sounds in fraud (such as mail or wire fraud), Plaintiffs must plead these acts with particularity, Fed. R. Civ. P. 9(b); <u>Williams v. Affinion Group, LLC</u>, 889 F.3d 116, 124 (2d Cir. 2018); <u>Mackin</u>, <u>supra</u>, 59 F. Supp. 3d at 551.  Fraud is alleged in particularity for a RICO action by specifying the time, place, speaker, and contents of the correspondence, <u>Luce v. Edelstein</u>, 802 F.2d 49, 54 (2d Cir. 1986); <u>see also</u> W.D.N.Y.

14

Loc. Civ. R. 9(e)(3) (plaintiffs to identify in civil RICO Case Statement "the time, place and contents of the alleged misrepresentations, and the identity of the persons whom to whom and by whom the alleged misrepresentations were made").   This Court's Local Civil Rule 9 further requires Plaintiffs to detail in their RICO Case Statement the pattern of racketeering activity, listing the alleged predicate acts and the dates of these acts, W.D.N.Y. Loc. Civ. R. 9(e)(1), (2).   Where, as here, the RICO claim is based on predicate offenses of wire or mail fraud, "the 'circumstances constituting fraud or mistake' shall be stated 'with particularity,'" id., R. 9(e)(3) id.

a.  Mail and Wire Fraud

The elements of mail or wire fraud under 18 U.S.C. §§ 1341 and 1343 are a scheme to defraud money or property and used the mails or wire transmission to further the scheme, Williams, supra, 889 F.3d at 124-25 (Docket No. 88, Pls. Memo. at 12); see Fountain v. United States, 357 F.3d 250, 255 (2d Cir. 2004).

b.  Other Cited Predicate Acts

Plaintiffs allege violations of other federal crimes as predicate acts (Docket No. 65, 2d Am. Compl. ¶ 25; Docket No. 84, Pls. RICO Case Statement at 8, 9).   The Currency and Foreign Transactions Reporting Act, 31 U.S.C. § 5313, to prevent money laundering through reporting institutions requires reporting on certain currency transactions.   This anti-structuring provision (31 U.S.C. § 5324, not alleged by Plaintiffs here) requires domestic banks to report cash transactions over $10,000 while other provision makes it illegal to "structure" a transaction, that is breaking it up into separate transactions each below the $10,000 threshold to evade this reporting requirement, see Ratzlaf v. United States, 510 U.S. 135, 136, 138-39, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994).

The essential elements of interstate transportation of property taken by fraud in violation of 18 U.S.C. § 2314 is transporting or caused the transport in interstate commerce of property valued at $5,000 or more with knowledge that the property was fraudulent taken, stolen, or converted from its rightful owner, United States v. Cardall, 885 F.2d 656, 674 (10th Cir. 1989); United States v. Weiner, 755 F. Supp. 748, 752 (E.D. Mich. 1991).

For the Hobbs Act, 18 U.S.C. § 1951, Plaintiffs must allege interference with commerce and extortion, Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).  That act defines "extortion" as obtaining property from another, "with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right," 18 U.S.C. § 1951(b)(2).

### 6.  § 1962(d) Civil RICO Conspiracy, Count III

Count III alleges a RICO conspiracy, in violation of § 1962(d).  "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section," 18 U.S.C. § 1962(d); see also, e.g., Westchester Cnty. Indep. Party, supra, 137 F. Supp. 3d at 618 (plaintiff did not plead substantive RICO violation thus the § 1962(d) conspiracy claim fails, citing cases).  In addition to alleging RICO violations, Plaintiffs need to establish that Defendants conspired to violate RICO, that they agreed to form and associate themselves with a RICO enterprise, that they agreed to commit at least two predicate acts in furtherance of a pattern of racketeering, Mackin, supra, 59 F. Supp. 3d at 555.

As observed by Judge Elizabeth Wolford,

"As to the 'agreement' requirement, '[b]ecause the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil

16

conspiracy complaint, at the very least, must allege specifically such an agreement.'  Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 (2d Cir. 1990).  'Although a plaintiff is not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) in pleading a RICO conspiracy, a RICO conspiracy claim "should be more than a conclusory add-on at the end of a complaint."'  Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc., 17 F. Supp. 3d 207, 230 (E.D.N.Y. 2014) (quoting FD Prop. Holding, Inc. v. U.S. Traffic Corp., 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002)) (internal citation omitted)."

Mackin, supra, 59 F. Supp. 3d at 555.

To be liable for a RICO conspiracy, a Defendant must be aware of the existence of the conspiracy and understand that the RICO enterprise extends beyond that party's individual role, Burke v. Dowling, 944 F. Supp. 1036, 1068 (E.D.N.Y. 1995); see United States v. Viola, 35 F.3d 37, 44 (2d Cir. 1994).  Plaintiffs also must "allege an injury caused by a predicate act in furtherance of the conspiracy," Burke, supra, 944 F. Supp. at 1068; Hecht, supra, 897 F.2d at 25.

The Supreme Court in Salinas v. United States held that "a conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopts the goal of furthering or facilitating the criminal endeavor," 522 U.S. 522 U.S. 52, 65, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (Docket No. 88, Pls. Memo. at 14).

"True, though an 'enterprise' under § 1962(c) can exist with only one actor to conduct it, in most instances it will be conducted by more than one person or entity; and this in turn may make it somewhat difficult to determine just where the enterprise ends and the conspiracy begins, or, on the other hand, whether the two crimes are coincident in their factual circumstances," Salinas, supra, 522 U.S. at 65.

B.  Plaintiffs' RICO Claims

1.  Contentions

a.  Plaintiffs' Amended Contentions

Plaintiffs allege that Defendants engaged a pattern of racketeering activity from the sale of fraudulent or nonexistent debts.  Defendants allegedly engaged in this pattern from 2014 to 2018, including the sales of portfolios of some of these debts to Plaintiffs. (Docket No. 84, Pls. RICO Case Statement.)

Plaintiffs argue five predicate acts advanced the racketeering.  They claim Defendants engaged in mail and wire fraud in soliciting the sale of the debt portfolios (id.). From that solicitation, Plaintiffs paid over $2.5 million for phantom debt portfolios. Plaintiffs also claim Defendants violated the Currency and Foreign Transactions Reporting Act, 31 U.S.C. § 3515 (id. at 8, 9) but without stating how.  Plaintiffs also claim that Defendants engaged in interstate transportation of persons or property obtained by fraud in violation of 18 U.S.C. § 2314 and the Hobbs Act, 18 U.S.C. § 1951 (id.).

The association-in-fact enterprise Plaintiffs allege consists of Defendants (the principals and officers of the corporate Defendants and the corporations) (id. at 12).

b.  Movants' Arguments

Movants argue that Plaintiffs fail to establish a RICO enterprise or a pattern of racketeering activity (Docket No. 86, Movants Memo. at 6-11, 11-14).  In opposition to Counts I, II, and III, Movants state that Plaintiffs have not alleged sufficiently the purpose, relationships, and longevity for their claimed association-in-fact enterprise (id. at 7-11). Plaintiffs also failed to allege a pattern of racketeering (according to Movants) because

Plaintiffs cite to few instances of wire or mail communications and thus did not allege predicate wire or mail fraud claims (id. at 11-14).

They claim that Plaintiffs did not allege an attempted takeover of a legitimate business for violation of § 1962(b), thus Count II is implausible (id. at 15-16). Movants further argue that the RICO conspiracy alleged in the Count III also is implausible once the substantive RICO counts fail (id. at 16-17). Furthermore, Movants contend Plaintiffs fail to allege that Movants agreed to participate in the enterprise's affairs through a pattern of racketeering activity (id.). Finally, Movants urge this Court decline to exercise supplemental jurisdiction over the remaining state fraud claims (id. at 17-18).

c. Plaintiffs' Response to this Motion

Plaintiffs respond that, under Rule 12 and liberal pleading standards for reading their Complaint, they allege an enterprise and specifically an association-in-fact enterprise (Docket No. 88, Pls. Memo. at 1-11, 16-17). They contend that the enterprise need not consist of a strict hierarchy, structure, or organization, see Boyle, supra, 556 U.S. at 940-41, 950; rather, they insist that they sufficiently allege that Movants and the other Defendants formed an informal enterprise to sell and collect from phantom debts, including the debt packages sold to Plaintiffs (id. at 5-8). Next, they claim that alleged longevity of the enterprise, existing for four years (id. at 8-11). The enterprise is not limited to Defendants' dealings with Plaintiffs (id. at 10).

Plaintiffs argue that they alleged mail and wire fraud predicate offenses for the pattern of racketeering activity (id. at 11). They further contend that the mailing need not contain misrepresentations to be mail fraud provided the mailing was essential part of the scheme to defraud (id.).

19

Next, Plaintiffs allege § 1962(b) claims because their transactions with Movants showed Movants retained control over the joint venture (id. at 11-12, quoting Docket No. 65, 2d Am. Compl. ¶ 30, Ex B).  There, they allege that Hylan farmed debt collection to collectors (such as Worldwide Defendants), selling some debts under participation agreements where Hylan retained interest from the collected debts used by the buyers of these debts (Docket No. 65, 2d Am. Compl. ¶ 30).

Plaintiffs argue that they alleged a RICO conspiracy (Docket No. 88, Pls. Memo. at 13-16, citing Docket No. 65, 2d Am. Compl. ¶ 101).  They contend that they did not need to allege violation of predicate offense or agreement to do so (Docket No. 88, Pls. Memo. at 16, 14).

They conclude that, viewing the Second Amended Complaint liberally, the details of this enterprise are within the control of Defendants.  Plaintiffs conclude that the case should not be dismissed prior to any discovery.  (Id. at 16-17.)

d.  Movants' Reply

Movants reply that Plaintiffs' opposition was "as vague and conclusory as the Second Amended Complaint . . . it purports to defend" (Docket No. 89, Movants Reply Memo. at 1).  They contend that Plaintiffs allege a "feeble" association-in-fact enterprise necessary for a RICO violation by cutting and pasting allegations from government agency lawsuits, with conclusory labels, failing to adequately plead a RICO complaint (id.).

They argue that Codefendant Joel Tucker defrauded and later entered a guilty plea in the Western District of Missouri that Plaintiffs' claims arose from Tucker's fraud (id. at 1-2).  Movants denied knowing of Tucker's fraud and argue that a collusion allegation with

Tucker is implausible given Plaintiffs' allegation of their arms' length purchase of the debt packages (id. at 2).

Next, Movants reply that Plaintiffs still have not plead a plausible enterprise (id. at 2-7).  First, Movants argue that Plaintiffs have not alleged a common purpose or sufficient relationships to satisfy an association-in-fact enterprise (id. at 3-5).  Movants accuse Plaintiffs of stringing together the independent actions of Worldwide Processing Group and allege a Hobbs Act with Movants' alleged activities (id. at 4).  Movants also argue that the Second Amended Complaint fails to establish the longevity elements for an enterprise lasting from 2013 through 2016 (id. at 5) or to 2019 when Movants allegedly attempted to eliminate evidence but Movants claim that Plaintiffs do not allege with any specificity how any Movant attempted to eliminate evidence (id. at 5-6; cf. Docket No. 65, 2d Am. Compl. ¶ 6).  But focusing upon the alleged predicate acts of mail and email leading to the sales to Plaintiffs of the debt packages from February to May 2016, Movants concluded that the enterprise lacked sufficient longevity to be an association-in-fact (Docket No. 89, Movants Reply Memo. at 6-7).

Next, Movants reply that Plaintiffs have not alleged a pattern of racketeering activity (id. at 7-9).

On the Count II and § 1962(b), Movants repeat their initial argument (Docket No. 86, Movants Memo. at 15-16) that this allegation is implausible and "gibberish" (Docket No. 89, Movants Reply Memo. at 9-10).  On the Count III and a RICO conspiracy, Movants argue that such a conspiracy also was implausible as the substantive RICO counts fail (id. at 10).  The Second Amended Complaint fails to allege Movants agreed to participate in the charged enterprise, merely alleging that they agreed to steal money from

Plaintiffs and commit a predicate act (id.).   Movants conclude that this conspiracy allegation remains implausible even if the substantive First or Second Causes of Action survive (id.).

### 2.   Plaintiffs Fail to Allege Substantive RICO Claims

Plaintiffs needs to allege all the elements for RICO claims against each Defendant and satisfy the high pleading standards for those allegations.   With the high pleading standard for asserting civil RICO claims, Mackin, supra, 59 F. Supp. 3d at 541, and consideration of the Second Amended Complaint (Docket No. 65) with Plaintiffs' RICO Case Statement (Docket No. 84) supplementing its allegations, id.; see McLaughlin, supra, 962 F.2d at 189, this Court finds that Plaintiffs have not alleged RICO claims under 18 U.S.C. § 1962(c), (b), or (d).

First, as in Mackin, Plaintiffs' RICO Case Statement "is hardly a model of clarity, and [Plaintiffs], for the most part, merely reiterate[] the statements contained in the amended complaint," Mackin, supra, 59 F. Supp. 3d at 540.

### 3.   Enterprise and Association-in-Fact Enterprise

#### a.   Conduct

Plaintiffs allege the conduct of the enterprise by the sale of phantom or sham debt portfolios.   They allege that these debts are phantom either because of their fabrication or creation without the permission of the debtors.   Plaintiffs also allege illegal collection efforts by Worldwide (Docket No. 84, Pls. RICO Case Statement at 7).

#### b.   RICO Association-in-fact Enterprise

Movants contend that the Second Amended Complaint does not plausibly allege a common purpose because Plaintiffs merely allege "a limited series of acts" (Docket

No. 86, Movants Memo. at 7).  Plaintiff's RICO Case Statement alleges that Defendants had a common purpose to sell and collect allegedly false debts.

As for the relationship of participants, Plaintiffs describe the corporate affiliations among some parties and the transactions of the phantom debt portfolios (Docket No. 84, Pls. RICO Case Statement at 1-8).  Even as augmented by Plaintiffs' RICO Case Statement, Plaintiffs made vague, conclusory allegations of the relationship between Defendants.

As for the longevity of the association-in-fact enterprise, Plaintiffs allege different periods for the operation of this enterprise.  In their Second Amended Complaint, Plaintiffs claim Defendants engage in racketeering activity from 2013 (Docket No. 65, 2d Am. Compl. ¶¶ 6, 24, 62, 109) through 2018 or 2019, citing as predicate acts the November 2015 and May 2016 sales agreements with Plaintiffs and Defendants' correspondence leading to entry into these agreements (Docket No. 84, Pls. RICO Case Statement at 11, 9-10).  Now they argue the enterprise operated from 2014 until the 2020 filing of the Complaint, operating for at least four years (Docket No. 88, Pls. Memo. at 8-9).  The Second Amended Complaint alleges three different relevant periods for this case: from 2013 through "November 2015 & 2016" when Defendants fraudulently induced Plaintiffs to buy the phantom debts; or through December 2018 when the Federal Trade Commission and the New York State Attorney General sought to permanently enjoin Defendants; or until late 2019 when Defendants attempted to eliminate evidence of their wrongdoing (Docket No. 65, 2d Am. Compl. ¶ 6).  Plaintiffs claim at least operations from over two years and up to six years.

Courts have held that an association-in-fact enterprise operating for two years or more satisfies the RICO longevity element, <u>Automated Teller Mach. Advantage LC v. Moore</u>, No. 08 Civ. 3340 (RMB) (FM), 2009 WL 2431513, at *5-6 (S.D.N.Y. Aug. 6, 2009) (over 2 years) (<u>see</u> Docket No. 88, Pls. Memo. at 9); <u>Allstate Ins. Co. v. Etienne</u>, No. 09-CV-3582, 2010 WL 4338333, at *6 (E.D.N.Y. Oct. 26, 2010) (3 years).

Movants counter that these allegations merely transform a "single scheme of limited duration into a RICO enterprise" (Docket No. 86, Movants Memo. at 9, quoting <u>Ozbakir v. Scotti</u>, 764 F. Supp. 2d 556, 570 (W.D.N.Y. 2011) (Larimer, J.)).  In <u>Ozbakir</u>, Judge Larimer found that a wire and mail fraud scheme from April 2004 to January 2006 did not suggest a continuing scheme to allege RICO violations, <u>id.</u>  Further, "While plaintiffs vaguely suggest that defendants engaged in other unspecified 'wire fraud activities' in connection with the prior transactions involving this property, there is no indication that such acts were numerous or varied, or that they involved many participants.  In addition, all these acts are alleged to have formed part of a single scheme with a single set of victims—the plaintiffs," <u>id.</u>

Similarly, here LGN and Prudent allege generically a single scheme against potential buyers of debt packages, specifically Defendants' agreements with Plaintiffs as an example.  The Second Amended Complaint and the RICO Case Statement do not allege other instances of debt practice sales.  But Plaintiffs merely allege a single scheme from the allegations of the slight details given for Plaintiffs' deals and absence of allegations that Defendants sold similar debt packages and servicing of these debts to others.  Plaintiffs allege this single scheme from February 24, 2016 (with Shaevel's first identified correspondence with Prudent for the wire fraud predicate offense, Docket

No. 65, 2d Am. Compl. ¶ 43), through May 25, 2016 (and Shaevel's correspondence with LGN) (id. ¶ 56; see Docket No. 86, Movants Memo. at 10-11).  Without allegations of prior mail or wire communications for the sale of similar debt packages, this is far less than at least two years courts have held satisfied longevity for an alleged association-in-fact enterprise.  The Second Amended Complaint and the RICO Case Statement fail to satisfy the longevity requirement.

c.   Pattern of Racketeering Activity and Predicate Acts—Mail and Wire Fraud

As for alleging the pattern of racketeering activity, Plaintiffs claim the sales of two phantom debt portfolios to them and the predicate offenses mail and wire fraud from the correspondence leading to Plaintiffs' two purchases of the phantom debt portfolios.  They also generally allege the creation, collection, and sale of phantom debts to unnamed other buyers.

First, correspondence for these two purchases does not establish a pattern.  They do not specify the details of this wire and mail correspondence either leading to Plaintiffs' purchases or to other victims.  Plaintiffs claim that the fraud "was preceded by several phone calls, emails with the parties" to agree upon the eventual purchase price (Docket No. 84, Pls. RICO Case Statement at 10).  Despite instructed to describe with particularity under Local Rule 9 (see id.), Plaintiffs do not plead any correspondence with particularity (such as identifying the time, place, contents) as required for fraud allegations, Fed. R. Civ. P. 9(b); W.D.N.Y. Loc. Civ. R. 9(e)(3); see Williams, supra, 889 F.3d at 124.

Plaintiffs do state that the correspondence was from Shaevel with their president, Jacob Gitman (Docket No. 65, 2d Am. Compl. ¶¶ 43, 55).  They allege on or about March 25, 2016 emailing a marketing document from Mainbrook Asset Partners I (id.

¶ 55, Ex. C; Docket No. 84, Pls. RICO Case Statement at 2, Ex. B) without detailing who received that document.   Plaintiffs only allege the correspondence from Shaevel and Mohindra with Plaintiffs' agreements signed for Hylan Debt Fund and Mainbrook Asset Partners (Docket No. 65, 2d Am. Compl. ¶¶ 43, 57, Exs. A, B).   They do not name the other Movants as correspondents to allege mail or wire fraud liability.   Plaintiffs did not establish the requirements for each Defendant for predicate acts.   Otherwise, they fail to allege that wire communication and mail were used in other transactions attempting to sell the phantom debts.

### d.  Other Alleged Predicate Acts

As for the remaining predicate acts alleged, it is also unclear whether they alleged any violation of the reporting requirement of the Currency and Foreign Transactions Reporting Act (cf. Docket Nos. 65, 2d Am. Compl. ¶ 25; 84, Pls. RICO Case Statement at 8, 9, 15) for a predicate RICO act.   The Second Amended Complaint and Plaintiffs' RICO Case Statement fail to allege an entity within the enterprise with a cash transaction reporting requirement (such as a bank), violation of that requirement, or conducting anti-structuring activities.   Plaintiffs do not articulate payments (either the purchasing of the debt packages or payments of those debts) that appeared structured to avoid the reporting requirement.   Plaintiffs' response to the Motion to Dismiss also does not discuss these offenses as predicate acts.

Plaintiffs allege in the Second Amended Complaint for the predicate Hobbs Act violation that Defendants (primarily Worldwide Processing Group and its collection efforts) sometimes used violence and other unlawful means to receive payments for the phantom debts from the purported debtors (Docket No. 65, 2d Am. Compl. ¶¶ 25, 63) and reiterate

this predicate offense in their RICO Case Statement (see Docket No. 84, Pls. RICO Case Statement at 8, 9, 15).  They do not amplify this claim in their RICO Case Statement, the purpose of that Statement, see W.D.N.Y. Loc. Civ. R. 9(e)(1)-(2), (6), (7).  Plaintiffs do not state the details of any Hobbs Act violation or how they are related to other predicate acts to show they are part of a common plan, cf. id. R. 9(e)(2), (6), (7).  These allegations do not include Movants as violators of the Hobbs Act, cf. id. R. 9(e)(2) (provide in RICO Case Statement the participants in the predicate acts).

Thus, limited to the alleged wire and mail fraud predicate acts, these were insufficient to establish a pattern of racketeering activity or the involvement of the Movants (save Andrew Shaevel) to state RICO claims.  Movants' Motion to Dismiss (Docket No. 86) dismissing Count I for the lack of a pattern of racketeering activity due to the dearth of predicate offenses is granted.

> e.  Acquiring or Maintaining the Enterprise, 18 U.S.C. § 1962(b)

While Plaintiffs allege Shaevel's ownership or interest in some of the corporate Movants (Docket No. 65, 2d Am. Compl. ¶ 8), Plaintiffs also have not alleged a takeover of a legitimate business required to state a claim under § 1962(b) for their Count II claim (Docket No. 86, Movants Memo. at 16).  The Second Amended Complaint alleges that Hylan farmed debts to collectors which Plaintiffs characterized as being "subject to numerous consumer complaints" (Docket No. 65, 2d Am. Compl. ¶ 30).  They do not claim, however, that Hylan farmed debts to legitimate collection entities or any ownership or domination of these collectors.

Their RICO Case Statement amplifying the Second Amended Complaint alleges that Defendants "maintained their control in the partnership agreement executed between

27

the parties, as the Managing Member," citing two attached agreements (Docket No. 84, Pls. RICO Case Statement at 14, Exs. A, C).  Those attached agreements, however, are the sales agreements with each Plaintiff that Hylan Debt Fund and Mainbrook Asset Partner respectively entered (id. Exs. A, C) and make no reference to the organization of the sellers.  Those agreements did not create new entities that Movants controlled.  These allegations do not show acquisition or maintenance of control over a legitimate business.  The RICO Case Statement here does not describe in detail the acquisition or maintenance of any interest or control of the enterprise, cf. id. R. 9(l).

Furthermore, Plaintiffs do not allege injuries from Movants' control or acquisition of the enterprise.  Movants' Motion to Dismiss (Docket No. 86) Count II is granted.

### f.   Plaintiffs Failed to Allege RICO Clams

Plaintiffs did not allege an association-in-fact enterprise and a pattern of racketeering activity.  Even as supplemented by Plaintiffs' RICO Case Statement (Docket No. 84), Plaintiffs fail to allege with particularity or meet the high pleading standard for their RICO claims.

Furthermore, it is doubtful if Plaintiffs alleged distinct persons from the alleged enterprise.  According to the RICO Case Statement, Plaintiffs allege that the RICO "persons" are distinct from the RICO enterprise (Docket No. 84, Pls. RICO Case Statement at 13, 14).  But they only make conclusory assertion of separation.  Plaintiffs name entities or persons as RICO "persons" and as part of the enterprise (such as Hylan Asset Management, Tucker, and Shaevel).  Despite denying naming entities as both "persons" and the "enterprise" (id.), Plaintiffs violate the distinctiveness requirement by

alleging the enterprise is the same as the persons named as Defendants, thus failing to allege a distinct RICO enterprise, see Mackin, supra, 59 F. Supp. 3d at 546.

Thus, Movants' Motion to Dismiss (Docket No. 86) Counts I and II alleging violations of 18 U.S.C. § 1962(c) and (b) is granted.  This Court next considers Plaintiffs' RICO conspiracy allegations in Count III.

### 4.  RICO Conspiracy, 18 U.S.C. § 1962(d)

Plaintiffs first need to plead substantive RICO claims that Defendants conspired to commit, Westchester Cnty. Indep. Party, supra, 137 F. Supp. 3d at 618; First Capital Asset Mgmt., supra, 385 F.3d at 164 (because RICO conspiracy claims are entirely dependent on substantive RICO claims, dismissal of conspiracy claim upheld where substantive claims are dismissed); BWP Media USA Inc. v. Hollywood Fan Sites, LLC, 69 F. Supp. 3d 342, 363 (S.D.N.Y. 2014) (see Docket No. 86, Movants Memo. at 16; Docket No. 89, Movants Reply Memo. at 10).  They, however, generally allege in the RICO Case Statement that Defendants intended to further the enterprise by engaging in the predicate acts of mail and wire fraud, currency reporting, transport of property obtained by fraud, and violation of the Hobbs Act (Docket No. 84, Pls. RICO Case Statement at 15).  At the core Plaintiffs claim that Defendants' conspiracy withholding the fact that the debts they were selling and collecting were fake (id.).

This Court's Local Civil Rule 9(n) requires a civil RICO Case Statement describe in detail an alleged § 1962(d) conspiracy to supplement Plaintiffs' pleadings, W.D.N.Y. Loc. Civ. R. 9(n).  Plaintiffs here did not do so.  They state generally that Defendants conspired to engage in predicate acts of mail and wire fraud (among other listed offenses) (Docket No. 84, Pls. RICO Case Statement at 14-15).  Plaintiffs do not identify the RICO

Defendant conspirators; presumably all named Defendants were conspirators.  They also did not identify the individual roles of each conspiring Defendant.  They do not allege agreement of the Defendants to form the RICO conspiracy or to commit predicate acts in furtherance of the enterprise.  Absent the requisite details of the RICO conspiracy, the claims in Count III are insufficiently alleged.

As the Second Amended Complaint fails to state a substantive RICO claim, it also fails to state a RICO conspiracy claim, BWP Media USA Inc., supra, 69 F. Supp. 3d at 363.  Thus, Movants' Motion to Dismiss (Docket No. 86) dismissing Count III is granted.

### C.  Supplemental Jurisdiction

Plaintiffs also allege common law fraud claims.  Movants urge this Court to not exercise supplemental jurisdiction of both Counts IV, Counts V and VI of the Second Amended Complaint (Docket No. 86, Movants Memo. at 17-18).

#### 1.  Standards

This Court has jurisdiction over these common law fraud counts only if it exercises supplemental jurisdiction over them.

Subject matter jurisdiction over these state law claims may be raised by the parties or by this Court sua sponte, Lyndonville Sav. Bank & Trust v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000).  This Court must examine its jurisdiction at any point in the proceeding, Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (the district court has "to consider throughout the litigation whether to exercise its jurisdiction over the case"); see 13D Charles A. Wright, Arthur R. Miller, Edward H. Cooper, and Richard D. Freer, Federal Practice and Procedure § 3567.3, at 412 (Jurisd. rev. 3rd ed. 2008).

Under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over Plaintiff's state law claims, see Klein v. London Star Ltd., 26 F. Supp. 2d 689, 692 (S.D.N.Y. 1998), or may decline to hear these supplemental state law claims, 13D Federal Practice and Procedure, supra, § 3567.3, at 397.   Under § 1367(c), this Court declines to exercise supplemental jurisdiction if all original jurisdiction claims were dismissed, 28 U.S.C. § 1367(c)(3); see 13D Federal Practice and Procedure, supra, § 3567.3, at 400, 428-29.   This Court retains discretion to exercise supplemental jurisdiction even after dismissal of original federal jurisdiction claims, id. at 432.

2.   Contentions

Movants argue that this Court should decline exercising supplemental jurisdiction over Plaintiffs' state common law counts (Docket No. 86, Movants Memo. at 17-18; see Docket No. 78, Movants Memo. at 14-15; see also Docket No. 89, Movants Reply Memo. at 1).

Aside from a generic declaration that they allege plausible state law claims (Docket No. 88, Pls. Memo. at 2), Plaintiffs have not addressed their common law claims.   They also are silent as to this Court's supplemental jurisdiction.

3.   This Court Declines to Exercise Supplemental Jurisdiction

While Plaintiffs' common law counts arise from the same operative facts as their RICO counts, the present dismissal of the RICO counts (the only original jurisdiction basis for this case) mandates declining exercise of supplemental jurisdiction, 28 U.S.C. § 1367(c)(3).   Therefore, Movants' Motion to deny supplemental jurisdiction and dismiss the state fraud claims (Docket No. 86) is granted.

D.  Remaining Non-Movant Defendants

As noted, Defendants Joel Tucker; Bahamas Marketing Group, LLC; SQ Capital LLC, JT Holdings, Inc.; HPD LLC; Hirsh Mohindra; Worldwide Processing Group, LLC; and Frank Ungaro, Jr., have yet to appear in this case.  Plaintiffs filed Affidavits of Service for Tucker, Bahama Marketing Group, SQ Capital, JT Holdings, and HPD LLC (Docket Nos. 46, 18, 20, 41, 12, 19, 40).  Plaintiffs, however, did not file proof of service of the other Defendants; these Defendants apparently were not served within 90 days after filing the Complaint.  Plaintiffs also have not sought default judgment against these Defendants.

As for Tucker and his corporate affiliate Codefendants, Plaintiffs shall show cause as to why this case should not be dismissed as to these Defendants for want of prosecution due to their failure to seek default as to these Defendants under Rule 55, see Sutton v. Lonza, No. 3:19-CV-117-PLR-HBG, 2020 WL 2946068, at *2 (E.D. Tenn. June 3, 2020).

As for unserved Mohindra, Ungaro, and Worldwide Processing Group, if a Defendant is not served within 90 days after fling the Complaint, this Court "must dismiss the action without prejudice against that defendant," Fed. R. Civ. P. 4(m), or order service be made within a specified time, id., Mhina v. Citizens Bank, N.A., No. 5:22-cv-427 (BKS/ML), 2022 WL 17415109, at *3 (N.D.N.Y. Dec. 5, 2022), dismissing action, 2023 WL 144050 (N.D.N.Y. Jan. 9, 2023).  Plaintiffs shall file proof of service as to them or submit a detailed status report addressing the completion of service upon these Defendants.  If Plaintiffs fail to do so, they are ordered to show cause why this action should not be dismissed (without prejudice) for failure to complete service of these three Defendants,

see Mhina, supra, 2022 WL 17415109, at *3.  This Decision constitutes notice to Plaintiffs of this Court's decision to dismiss claims against these unserved Defendants, Chavis v. Zodlow, 128 F. App'x 800, 802 (2d Cir. 2005) (summary Order).

Plaintiffs shall so respond to both groups of non-movants within 10 days of entry of this Decision.  Failure to do so may result in dismissal of claims against the Defendant Plaintiffs have not addressed.

### IV.    Conclusion

Plaintiffs fail to allege RICO claims from Movants' purported sales of so-called debt products to them.  They have not alleged an association-in-fact enterprise or pattern of racketeering activity based solely upon the fraudulent mail and wire communications leading to the two sales to Plaintiffs without stating the roles of all Movants.  Further, absent substantive RICO claims, Plaintiffs also failed to allege a RICO conspiracy. Movants' Motion to Dismiss (Docket No. 86) the original federal jurisdiction claims alleged in Counts I, II, and III of the Second Amended Complaint is granted.

Given the disposition of the federal RICO claims, this Court also must decline to exercise supplemental jurisdiction over the common law fraud counts (both Count IVs, Counts V and VI).  Movants' Motion (id.) to decline supplemental jurisdiction over (and as a result dismissal of) the state fraud claims is granted.

Thus, Movants' Motion to Dismiss (id.) is granted.  Judgment shall be entered dismissing Movants from this case.

As for the non-moving Defendants which either not were served or not appearing in this case, Plaintiff shall show cause within 10 days of entry of this Decision (1) service of the unserved Defendants or (2) why default judgment was not sought from the served

Defendants.  If Plaintiffs fail to do this, claims against these Defendants will be dismissed without prejudice; if both sets of Defendants are not addressed by Plaintiffs, this entire case will be dismissed.

## V.    Orders

IT HEREBY IS ORDERED, that Movants' Motion to Dismiss (Docket No. 86) is GRANTED, dismissing case with prejudice.

FURTHER, that the Court Clerk is instructed to enter Judgment dismissing the Movants from this case.

FURTHER, that as to Defendants Joel Tucker; Bahamas Marketing Group, LLC; SQ Capital LLC, JT Holdings, Inc.; and HPD LLC, Plaintiffs shall show cause within 10 days of entry of this Decision as to why this case should not be dismissed as to these Defendants for want of prosecution due to their failure to seek default as to these Defendants.

FURTHER, that as to Defendants Hirsh Mohindra, Worldwide Processing Group, and Frank Ungaro, Jr., Plaintiffs also shall file within 10 days of entry of this Decision proof of service as to them or submit a detailed status report addressing the completion of service upon these Defendants.  If Plaintiffs fail to report, Plaintiff then are ordered to show cause why this action should not be dismissed (without prejudice) for failure to complete service of these Defendants.

SO ORDERED.


Dated:        May 19, 2023
              Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge